NOT RECOMMENDED FOR PUBLICATION
File Name: 22a0184n.06

Case No. 21-3684

# UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

**FILED**
May 02, 2022
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| MT. PLEASANT BLACKTOPPING COMPANY, INC., | ) ) ) | |
| Plaintiff-Appellant, | ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF OHIO |
| v. | ) ) | |
| GREENE COUNTY, OHIO; RONALD S. VOLKERDING; INVERNESS GROUP, INC., | ) ) ) ) | |
| Defendants-Appellees. | ) ) | |

Before: McKEAGUE, GRIFFIN, and READLER, Circuit Judges.

**CHAD A. READLER, Circuit Judge.** Greene County, Ohio, administers its sanitary sewer system infrastructure though a series of governing regulations. When one of those regulations was enforced against a contractor following its installation of several sewer lines, the contractor challenged the regulation as being both arbitrarily enforced and impermissibly vague. The district court, however, disagreed with the contractor's arguments and granted summary judgment to defendants. We affirm.

## BACKGROUND

The Greene County Sanitary Engineering Department oversees the County's sewer system. Relevant here is a County requirement that sewer lines pass the Department's T-V camera

inspection, which determines if there is too much standing water in a line. That requirement is codified in § 3.9.8 of the County's Specifications and Regulations, which the County promulgates under Ohio law. *See* Ohio Rev. Code §§ 6103.02, 6117.01, 343.01. In accordance with § 3.9.8, the test begins by flushing the sewer line with water. After the line is flushed, a camera is placed in the line so that "the bottom of the lens coincides with twenty-five percent (25%) of the diameter of the sewer line." If "the camera lens encounter[s] standing water" as the camera travels through the line, "the sanitary sewer in that area shall be considered unacceptable and shall be dug up and replaced."

That regulatory backdrop sets the stage for today's dispute. Mt. Pleasant Blacktopping, an infrastructure contractor, was hired by Inverness Group, a real estate developer, to install sewer lines for Inverness's Sugar Creek housing development in Greene County. Once the lines were installed, they were inspected by the County's Sanitary Engineering Department. As he watched video footage from a camera placed in the lines to examine their condition, a Department inspector noticed that "[t]here was significant water laying in a couple spots." Though all agree that the camera filmed standing water in the lines, it is unclear whether the camera lens made contact with that water. The inspector reported the issue to his supervisor. Several Department employees, including Ronald Volkerding, the sanitary engineer and director of the Department, watched the video. Together, they determined that two of the sewer lines failed the T-V inspection, meaning that they were "unacceptable," as that term is used § 3.9.8, and, as a result, must be replaced. Mt. Pleasant, however, refused to replace the lines.

Instead, the company sued Greene County and Volkerding (in both his official and individual capacity) and joined Inverness as a necessary party. The complaint asserted a § 1983 claim against Greene County and Volkerding, along with various state-law claims. Inverness filed

2

a counterclaim against Mt. Pleasant, alleging that Mt. Pleasant's refusal to replace the lines at issue breached a contract between the two parties. Following discovery, the parties filed cross motions for summary judgment. The district court granted Greene County and Volkerding's motion as to Mt. Pleasant's § 1983 claim. The district court then declined to exercise supplemental jurisdiction over the state-law claims and dismissed the case. Mt. Pleasant timely appealed the district court's grant of summary judgment.

## ANALYSIS

We review the district court's summary judgment decision de novo. *M.J. ex rel. S.J. v. Akron City Sch. Dist. Bd. of Educ.*, 1 F.4th 436, 445 (6th Cir. 2021). In so doing, we construe the evidence and draw all reasonable inferences in Mt. Pleasant's favor. *Id.* Greene County and Volkerding are entitled to summary judgment if they show "that there is no genuine dispute as to any material fact" and that they are "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

According to Mt. Pleasant, Department employees "traditionally and consistently construed and applied" § 3.9.8 to mean that a sewer line was unacceptable only if the camera lens "c[a]me into contact with" standing water in the line. Yet when inspecting Mt. Pleasant's lines, Department employees, for the first and only time, says Mt. Pleasant, applied § 3.9.8 to deem a line unacceptable if the camera merely saw standing water in the line. Such incorrect and arbitrary enforcement, Mt. Pleasant contends, violated its Fourteenth Amendment rights to substantive due process and equal protection. And § 3.9.8 itself, Mt. Pleasant claims, is unconstitutionally vague as applied because it allows for such arbitrary enforcement.

1. We begin with Mt. Pleasant's § 1983 claim against Volkerding, in both his individual and official capacities. Volkerding asserts that he is entitled to qualified immunity as to the individual capacity claim. With Volkerding having raised the issue, Mt. Pleasant bears "the burden

3

of showing that [Volkerding] is not entitled to qualified immunity." *Jacobs v. Alam*, 915 F.3d 1028, 1039 (6th Cir. 2019). To satisfy that burden, Mt. Pleasant must make two showings. One, that Volkerding violated a constitutional right. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). And two, that the right was clearly established at the time of the violation. *Id.* We may consider these questions in either order. *Id.* at 236.

Here, we can sidestep the first inquiry, as Mt. Pleasant plainly fails the second. With respect to its burden to demonstrate a "clearly established" constitutional violation, Mt. Pleasant, in its briefing before both this Court and the district court, failed to "identify a case that put [Volkerding] on notice that his specific conduct was unlawful" and to show that this is an "obvious case" where general "standards can 'clearly establish' the answer, even without a body of relevant case law." *Rivas-Villegas v. Cortesluna*, 142 S. Ct. 4, 8 (2021) (per curiam) (citation omitted). Indeed, it made no argument at all as to qualified immunity, clearly failing to carry its burden. Accordingly, Volkerding is entitled to qualified immunity. *See id.*; *see also Thomas v. City of Columbus*, 854 F.3d 361, 364 (6th Cir. 2017) ("We may affirm a decision of the district court for any reason supported by the record, including on grounds different from those on which the district court relied." (quotation omitted)).

As to Mt. Pleasant's claim against Volkerding in his official capacity, that claim is properly construed as a claim against Greene County. *See Pineda v. Hamilton County*, 977 F.3d 483, 494 (6th Cir. 2020); *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) ("As long as the government entity receives notice and an opportunity to respond, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity.").

2(a). That takes us to Mt. Pleasant's § 1983 claim against Greene County. One aspect of that claim challenges the purported arbitrary enforcement of § 3.9.8 against Mt. Pleasant.

Mt. Pleasant grounds that theory in both substantive due process and equal protection principles. When a plaintiff asserts a § 1983 claim against a municipality, commonly known as a *Monell* claim, the plaintiff must prove both that (1) it "suffered a constitutional violation" and (2) "a municipal policy or custom directly caused the violation." *Hardrick v. City of Detroit*, 876 F.3d 238, 243 (6th Cir. 2017); *see also Winkler v. Madison County*, 893 F.3d 877, 901 (6th Cir. 2018) (listing the four ways by which a plaintiff can prove a municipality had a "policy or custom" that directly caused a constitutional violation).

Mt. Pleasant has not identified a Greene County policy or custom that caused the alleged constitutional violations. Rather, it focuses solely on the one-time, allegedly unconstitutional acts of the Department's employees in conducting the T-V camera inspection of its sewer lines, without tying those acts to County policy or custom. Indeed, Mt. Pleasant's theory is that this case is the exception to the way County policy typically is implemented. Because this alleged exception is not a "policy or custom," Mt. Pleasant has failed to establish a *Monell* violation. *See Hardrick*, 876 F.3d at 243–44; *Siefert v. Hamilton County*, 951 F.3d 753, 767 (6th Cir. 2020).

Even if Mt. Pleasant did properly brief its *Monell* claim, we agree with the district court that its claims fail. Mt. Pleasant has a heavy burden to establish either its asserted substantive due process claim or equal protection "class of one" claim. *See Warren v. City of Athens*, 411 F.3d 697, 707–08 (6th Cir. 2005); *Loesel v. City of Frankenmuth*, 692 F.3d 452, 461–62 (6th Cir. 2012). These high bars guard against needlessly second-guessing the decisions of local governments. And as Mt. Pleasant fails to turn its dispute with Greene County into a constitutional tort, we affirm the grant of summary judgment to Greene County. *See Thomas*, 854 F.3d at 364.

2(b). We arrive at the same conclusion as to Mt. Pleasant's claim that § 3.9.8 is unconstitutionally vague as applied. Mt. Pleasant's claim faces a high bar, as "[f]ew statutes meet

the void-for-vagueness threshold." *United States v. Kettles*, 970 F.3d 637, 650 (6th Cir. 2020). A statute may be unconstitutionally vague if it either (1) "fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits" or (2) "authorizes or even encourages arbitrary and discriminatory enforcement." *Johnson v. Morales*, 946 F.3d 911, 929 (6th Cir. 2020) (citation omitted). Under the latter, a law is impermissibly vague if it "delegates basic policy matters to [officials] for resolution on an *ad hoc* and subjective basis." *Ass'n of Cleveland Fire Fighters v. City of Cleveland*, 502 F.3d 545, 551 (6th Cir. 2007) (citation omitted).

Assuming for *Monell* purposes that § 3.9.8 is Greene County's official policy, it is not unconstitutionally vague. Mt. Pleasant expressly abandons the first method of proving vagueness, acknowledging that § 3.9.8 has a "specific meaning" and is not "vague and ambiguous." That leaves the second method. On this point, Mt. Pleasant concedes that the text of § 3.9.8 provides an objective standard: if the camera lens encounters standing water, the line is unacceptable. And it agrees that for more than 20 years, "Greene County had been abiding by that meaning," other than as to its two rejected sewer lines. Yet despite, in Mt. Pleasant's words, the "definite meaning" of § 3.9.8, Department employees enforced the regulation arbitrarily and discriminatorily as to its lines. But allegedly arbitrary or inconsistent enforcement of a regulation whose terms are unambiguous does not render the regulation impermissibly vague. *See 600 Marshall Ent. Concepts, LLC v. City of Memphis*, 705 F.3d 576, 586–87 (6th Cir. 2013); *PHN Motors, LLC v. Medina Township*, 498 F. App'x 540, 547–48 (6th Cir. 2012). As applied to Mt. Pleasant, then, § 3.9.8 is not unconstitutionally vague.

\*       \*       \*       \*       \*

For the foregoing reasons, we affirm the district court's grant of summary judgment to Greene County and Volkerding, and we dismiss Mt. Pleasant's motion to strike Inverness as moot.