NOT RECOMMENDED FOR PUBLICATION
File Name: 20a0625n.06

No. 20-5253

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| BRITTANY BRYANT, | ) | |
| | ) | **FILED** |
| Plaintiff-Appellant, | ) | Nov 04, 2020 |
| | ) | DEBORAH S. HUNT, Clerk |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| ROBERT WILKIE, Secretary of the Department | ) | COURT FOR THE MIDDLE |
| of Veterans Affairs, | ) | DISTRICT OF TENNESSEE |
| | ) | |
| Defendant-Appellee. | ) | |
| | ) | |

Before: KETHLEDGE, DONALD, and LARSEN, Circuit Judges.

LARSEN, Circuit Judge. Brittany Bryant worked in various roles for the Department of Veterans Affairs (the VA). She alleges that she was exposed to a hostile work environment and was discriminated and retaliated against due to a disability. Bryant sued the Secretary of the Department of Veterans Affairs, Robert Wilkie, raising, among other claims, violations of Title VII of the Civil Rights Act of 1964 and the Rehabilitation Act of 1973. The district court dismissed her claims, concluding that Bryant failed to timely pursue her administrative remedies. We AFFIRM.

I.

Bryant began working for the VA as a certified nursing assistant in 2004. She alleges that, as early as 2009 when she worked in the acute/psych ward, her "work environment worsened and became hostile, and [she] was bullied by co-employees." In 2010, Bryant hurt her knee while

trying to prevent a physical assault by a patient on Bryant's supervisor. The injury required multiple doctor appointments and caused Bryant to miss work. The injury also caused her to be transferred out of her position in the acute/psych ward for almost one year. When she returned to the ward at the end of 2011, she continued "to endure retaliation in the form of verbal and physical threats, a hostile work environment, and workplace bullying."

The allegations central to this case, however, began in 2015.[1] According to Bryant, "leading up to February 2015, [she] began experiencing serious medical and health issues that were aggravated and exacerbated by the treatment she was receiving in the workplace." She filled out Family Medical Leave Act (FMLA) paperwork, after which she was "assigned light duty due to her medical condition." She received subsequent job reassignments to the kitchen, the Fee Basis department, and finally the Outpatient Lab. According to Bryant, her new manager at the Outpatient Lab told her that "[i]f I schedule you to work you are to be there. I know you are on FMLA, but that's no excuse." Bryant's manager would mark her for unexcused absences when Bryant missed work due to her doctor appointments. And according to Bryant, the hostile work environment continued in the Outpatient Lab. Attempts to mediate the work environment were unsuccessful, and Bryant filed for medical disability and went on continuous leave-without-pay status on August 1, 2016. Bryant retired on disability on June 24, 2017.

Bryant's treatment prompted her to initiate the Equal Employment Opportunity (EEO) process. In February 2015, Bryant brought an informal EEO complaint, alleging sexual harassment and a hostile work environment. The Office of Resolution and Management (ORM),

---

[1] Bryant also alleged that in July 2014 she was sexually harassed by a union representative. As discussed below, Bryant has abandoned any claim related to the sexual harassment, so we will not recount the facts related to those incidents.

however, closed Bryant's informal complaint and informed her that she could file a formal complaint. Bryant did not file a formal complaint.

On June 21, 2017, Bryant filed a second informal EEO complaint, claiming that "she was discriminated against based upon Disability—Physical and Reprisal." This time, after the ORM closed the informal complaint, Bryant did file a formal complaint. The formal complaint included, among others, the prior claims and allegations raised in her 2015 informal complaint and "a hostile work environment claim, based on disability and reprisal (prior EEO activity), claiming constructive discharge when in 2016 she [w]as forced to apply for disability retirement (forced retirement) or face termination." The ORM dismissed her formal complaint for two reasons: because she had previously raised some of the claims in an informal EEO complaint and had not pursued her remedies from the closure of that complaint, and because she had not initiated contact with an EEO Counselor within 45 days of the new alleged acts of discrimination, as required by 29 C.F.R. § 1614.105(a).

Bryant then filed suit alleging, as relevant here, "(1) violations of Title VII for sexual harassment, retaliation, hostile work environment, and constructive discharge; and (2) violations of the Rehabilitation Act for failure to accommodate and constructive discharge."[2] As to the discrimination, retaliation, and hostile-work-environment claims, the district court recognized that "[b]ased on the 45-day time limitation, the only claims that would have been timely raised in

---

[2] The district court concluded that Bryant had abandoned her failure-to-accommodate claim by not addressing it in her brief in response to the motion for summary judgment. The court also concluded that Bryant had failed to exhaust her remedies related to the sexual-harassment claims because she did not file a formal complaint from the closure of her 2015 informal complaint. Finally, the court concluded that, by not adding a constructive-discharge claim to her formal EEO complaint, Bryant failed to exhaust her remedies regarding that claim and could not pursue it further. Bryant does not challenge the district court's ruling as to any of these claims, so we do not discuss them further.

[Bryant's] 2017 Formal EEO Complaint would be claims for disability discrimination and reprisal based on events that occurred *after* May 8, 2017 (45 days before June 21, 2017)." The district court determined that Bryant had failed to identify any such claims—the last incident in the formal complaint occurred "at the very beginning of 2016." Thus, Bryant could not "show that she was discriminated against based on her disability or retaliated against by Defendant after August 1, 2016, because she was not even at work." Although Defendant had moved for summary judgment, the district court found it appropriate to dismiss Bryant's claims under Federal Rule of Civil Procedure 12(b)(6) for failure to exhaust her administrative remedies.

Bryant appeals. She asserts that the district court erroneously concluded that there were no discriminatory acts that occurred during the 45-day window.

## II.

Before filing claims under Title VII or the Rehabilitation Act, a federal employee, like Bryant, must exhaust her administrative remedies. "In permitting federal employees to sue under Title VII, Congress conditioned the government's waiver of sovereign immunity upon a plaintiff's satisfaction of 'rigorous administrative exhaustion requirements and time limitations.'" *McFarland v. Henderson*, 307 F.3d 402, 406 (6th Cir. 2002) (quoting *Brown v. Gen. Servs. Admin.*, 425 U.S. 820, 833 (1976)); *see also Smith v. U.S. Postal Serv.*, 742 F.2d 257, 262 (6th Cir. 1984) (concluding that the Rehabilitation Act requires the same exhaustion of remedies as Title VII). One requirement is that the employee "initiate contact with a[n] [EEO] Counselor within 45 days of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action." *McFarland*, 307 F.3d at 406 (alterations in original) (quoting 29 C.F.R. § 1614.105(a)(1)).

We first resolve a procedural matter. Bryant argues that the district court erred by dismissing under Rule 12(b)(6); according to Bryant, because the district court considered matters outside of the complaint, it should have applied the Rule 56 standard that governs motions for summary judgment. *See* Fed. Rule Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."). We need not decide whether the district court erred because, even if it did, Bryant fails to explain how she was harmed. *See Max Arnold & Sons, LLC v. W.L. Hailey & Co., Inc.*, 452 F.3d 494, 504 (6th Cir. 2006); *Stratienko v. Chattanooga-Hamilton Cnty. Hosp. Auth.*, 402 F. App'x 990, 993 (6th Cir. 2010). Here, Defendant's motion was styled as a motion for summary judgment, and discovery was complete. Bryant was aware that the district court could resolve the case on summary judgment grounds and had every opportunity to present evidence and respond to the motion. She does not explain how the case would be different had the district court applied the summary judgment standards as opposed to the Rule 12(b)(6) standards. In short, Bryant has not shown harm.

Now to the merits. The parties concede the relevant dates. As Bryant explains in her brief, "[b]ecause [her informal] EEO complaint was filed [on] June 21, 2017, at least one act giving rise to [her] claims must have occurred on or after May 8, 2017." Appellant Br. at 26–27. On appeal, Bryant says that one such act did occur—the denial of her retirement benefits on May 25, 2017. And this act, she claims, is sufficient to sweep in incidents outside the 45-day window under a continuing violation theory.

We may put to one side whether a continuing violation theory could apply in this context. *See Taylor v. Donahoe*, 452 F. App'x 614, 619 (6th Cir. 2011) (explaining that the "continuing

violation" theory applies only to claims of hostile work environment and not where the plaintiff "alleges discrete acts of discrimination or retaliation"). Even if it could, Bryant cannot use the May 25 denial of retirement benefits to establish that she timely initiated the EEO process.

First, Bryant never presented this argument to the district court, making no mention of it in her response to the motion for summary judgment. Only those arguments presented to the district court are preserved for our review. *See Armstrong v. City of Melvindale*, 432 F.3d 695, 700 (6th Cir. 2006) ("It is well-settled that this court's 'function is to review the case presented to the district court, rather than a better case fashioned after a[n] . . . unfavorable order.'" (alterations in original) (quoting *Barner v. Pilkington N. Am., Inc.*, 399 F.3d 745, 749 (6th Cir. 2005))). Bryant's failure to press the alleged May 25 denial of retirement benefits below constitutes forfeiture of that argument.

Second, though Bryant did allege in her formal EEO complaint that "[a]s of . . . May 25 2017, [the] VA is denying me my retirement benefits," no record evidence supports that assertion. The record evidence, in fact, suggests a different set of events. A letter in the record from the Office of Personnel Management shows that Bryant's application for retirement benefits was approved on June 3, 2017, only a few days after Bryant says she was denied retirement benefits. Bryant retired on disability on June 24, 2017.

> Finally, in a letter dismissing her formal EEO complaint, the ORM informed Bryant that:
>
> With respect to the processing of your disability retirement application, not receiving retirement, and denial of your dental coverage, issues or disputes concerning the processing of your retirement/medical disability retirement, including information, decision and letters, constitute collateral attacks on proceeding in other forums, and do not state justiciable claims, as the Office of Personnel Management has jurisdiction over such matters.

Bryant fails to mount any challenge to the ORM's conclusion that the denial of retirement benefits was outside its jurisdiction and not a justiciable claim.

For all these reasons, Bryant cannot now rely on the alleged denial of retirement benefits on May 25, 2017. And she makes no challenge to the assertion that all the other alleged incidents occurred outside of the 45-day window. Nor could she—the alleged incidents complained of in her second informal EEO complaint all occurred between January 2014 and January 2016, well before the May 8, 2017 cutoff date. As a result, Bryant has not established that the district court erred by concluding that she failed to exhaust her administrative remedies as required by Title VII and the Rehabilitation Act. The district court was right to dismiss her claims.

* * *

We AFFIRM.